May it please the Court, Counsel. My name is Eric Jensen. I represent the appellate in this case and his wife, Jonathan and Carla Edwards. The facts in this case are set forth, I think, very apely in the briefs by both sides, and I won't waste the Court's precious time by going through facts that I think are fairly obvious to the Court and are set forth in the briefs, other than just to say that this is an injury case involving product liability. We believe that the District Court erred in two significant ways. First, the District Court violated the well-established rules of determining summary judgment by, rather than just testing for whether there was a genuine issue of material fact in dispute, the Court instead made credibility determinations and ignored competent and substantial evidence that would support all of the elements required under Arkansas law for the plaintiff to prove a submissible case. I understand that you did not object to the plaintiff's statement of material facts. Instead, you put in competing affidavits. Yes, Your Honor. So the material facts are facts of the record on appeal. That is correct. And those material facts that were set forth by the motion tended to be facts that were detailing the accident, detailing the specific warnings that were included on various parts of the machine. And then we did file, I believe, some additional facts. I believe there were 9 or 12 paragraphs. I apologize for not knowing the exact number, but they were filed separately. And both sides filed their expert affidavits and referred to those specific facts in their briefing. And so the, rather than break down the expert affidavits into what would literally be probably a couple hundred paragraphs if you broke that down into each fact, those particular affidavits from both the defendant's expert, Mr. Mills, and his wasn't affidavits, but it was information contained in his deposition in his Rule 26 report. I'm sorry, counsel. Pardon me. Could I apologize? Thank you very much. Is that better? That's much better. Thank you. In addition to the issues related to the court weighing evidence, and more importantly, failing to recognize competent substantial evidence that proved all of the elements of our case, the trial court also determined in a two-sentence statement in its order that both the affidavit of Mr. Edwards and the affidavit of his expert, Mr. Rasnick, were considered sham affidavits and refused to consider those in the court's analysis. And I think... You're very unlikely to prevail on that argument on appeal. It's an abusive... To lead with that, I consider it a sign of weakness. I'm certainly not leading with it, Judge. I'm just trying to let you know which two areas I'm going to discuss, but... Let me tell you what bothers me about your... Because I understand your defective design theory. It was that Skyleft had a product liability duty to include a key override and instruct the customer not to let the key override into the field. That's one of three, Your Honor. Well, with respect to that one, I can't see why that's a design claim, the failure to instruct. I believe that... That may be a warning claim. It is. It is a warning claim, Your Honor. But the whole argument's here about design and the key override dominates the briefing. Well, I believe... To me, it Gray could have brought the key out in the field with him and probably would have, if he needed to, to get done what he and Edwards decided should be done to get that pole out of a backyard. Respectfully, Your Honor, I think that there are another issue with the keyed override. The other issue that Mr. Rasnick brought up in his... Both his deposition and in his Rule 26 report was not only a keyed override, but also a constant override switch, which avoids that issue completely. His theory of defect was that if you had constant override switch, Your Honor, there is briefing on that and it's in the record and we talk about it. And the constant override switch avoids this accident completely. And that analysis, most importantly, and this is an important piece of evidence that the trial court ignored completely, was the defendant's own expert agreeing that a keyed override would have, or a constant override switch, would have avoided this accident in its entirety. So the design defect claim, Your Honor, I think is strong in the case. It's a three-part design issue. The first is the issue of not designing a keyed override. And the court is very ably pointed out the court's picking which it believes. The second is the constant override switch, which is in the briefing and is in Mr. Rasnick's report. And then most importantly, the third thing is the design choice not to make a light or audible warning system to let an outside person who's around the machine know that the operator has, in fact, engaged the override switch. That was a design defect also. So there's really three design defects. Most importantly, I think that as you read the record as a whole, the court, it's not so much that the court below made certain choices, which was improper, but it also ignored wide swaths of evidence that I believe will show that summary judgment should be reversed. Judge Arnold and Judge Loken, both of you in 1999 were involved in a case that involved doctors testifying about causation in a case involving product liability of a medical device. And in that case, you reversed the district court for basically making the same error that we allege in this case, which was that the court made credibility determinations and chose which doctors met a certain test or which doctors did not make a certain test as to causation. Judge, that was the Bone v. Ames Tool 179F31080 that's cited in the brief. And I don't know what page on the brief, I apologize. But in that case, the analysis, though it was a causation only issue before the court back in 1999, the analysis that the court went through of the district courts picking and choosing, I think is very similar on an intellectual level. It wasn't the same legal issue, but it was a very similar analysis. And we're not asking the court to really go out on a limb here, so to speak. I know that this court, and I don't cite this case in the brief because it's Minnesota law and it's not directly applicable, but Judge Kelly, you and Judge Loken in a Toyota case in 2017 involving a J&OV analysis of whether a submissible case was made by a plaintiff against Toyota in a product's liability case. In that particular case, you both agreed that under a J&OV standard, which is fairly similar to the Rule 56 standard, that the plaintiffs did make a submissible case and they had the same three things we have in this case. They had a qualified, reputable expert who gave opinions of defect and danger. They had a conflicting set of testimony from the people on the ground. And finally, they had evidence of industry standards. And talking just briefly about industry standards, it's very important to note that the issues raised by the trial court below focus much on whether this is an alternative design that's circumstances of trying to get these diggers into these very narrow areas. I would point out two things for the court. One is that we know these systems work because they're on Skylift's later machines. And our expert testifies that all of the technology that made them available in 2017, 2018, 2019 was just as available in 2009 and 2010. I have a question. I haven't studied the record enough. Does the record show whether the digger could have gotten in this backyard with the stabilizers deployed? I think the record shows from the fact testimony of Mr. Gray, Mr. Edwards, and the other lineman whose names I don't remember, that the machine had to not have the stabilizers deployed to get into the area, but that once it was in the area, they could have been deployed. I believe the record is supportive of that. But then how do you get the pole out? Then you have to undeploy to get it out. It depends on what you're doing. This is exactly the type of fact analysis I think that But this is your burden in summary judgment is to show that this is The machine tipped over, Your Honor, and the analysis of whether it could have successfully finished the job of what the Mr. Gray tried to do Was it in the yard when it tipped over or before it got in the yard? I believe it was in the yard. It was in the area where the pole fell, which I believe the testimony is that it was in the yard. So now it's stabilized under your theory of what should have happened. No, Your Honor, we're not saying that The pole is grabbed and now it has to get out of the yard with the pole. Does the record show that that could have happened? Your Honor, I think the premise is faulty. We don't advocate that the pole should have been picked up by the machinery with the stabilizers able to deploy. That was what Gray and Edwards figured out. We're smarter than that other crew which used a chainsaw. We're just going to use the skinny digger that we can get in the backyard with. So now how do they get the pole out? Judge, I think when you look at getting the pole out, I'm not sure that's the analysis for the product liability portion of the claim. Well, I do. Well, I understand that. All right. That's the question I'm posing. The underlying question is whether it was your burden in defeating summary judgment to come up with evidence that this alternative technology which they should have employed, what would have happened? Judge, I think the capabilities of the machine are a separate issue for Mr. Gray and arguably if you want to argue Mr. Edwards' negligence. If they used the machine in a way to try to do something as obviously Mr. Gray was negligent to some degree because the machine tipped over and it hit Mr. Edwards and the constant operation switch. Doing what both of them had decided to do. Judge, I'm sorry. I couldn't hear you. Doing what both of them had decided to do was despite their knowledge of the risk of the digger with the stabilizer undeployed. Well, Judge, I don't believe that the record is clear. I don't believe the record is that it was open and obvious. Mr. Gray specifically said and when asked in his depo. That's why I'm asking you what facts are in the record about what they were doing and how inherently dangerous it was. Mr. Gray was specifically aware as was everybody on the scene in theory that not deploying the stabilizers could tip the machine over. They all knew that. That doesn't relieve the manufacturer. So did Edwards. But that does not relieve the manufacturer of a duty. And he was standing in the way when... Well, I don't know that he was standing in the way. The issue before the court and I'm into my rebuttal time here and I'm going to answer your question as best I can, Your Honor, and then save myself a minute or two to come back. Ultimately, the decisions made by Mr. Gray as a co-employee that may have been negligence are fact questions. Under Arkansas law, Mr. Gray or even Mr. Edwards' negligence does not excuse the manufacturer from their duties. And that's clear under the Nationwide case and it's also clear under the, if I can take for a second, also under the Hedroth v. Green case. All of the arguments related to their supposed negligence or misuse of the machine do not relieve. All of it was foreseeable use by the manufacturer. I do. I'm sorry. Go on now. The district court addressed mostly the strict liability claim and sort of said, well, in negligence you lose for the same reason. Do you agree with that? Do those rise and fall in the same way in your view? You didn't spend a lot of time on your second claim. I didn't because I believe the law in Arkansas is very clear. Arkansas under the statute kind of merges strict liability and negligence a little more than some states do. And ultimately the decisions made by the designers at Skylift that are set forth in the strict liability claim are also the basis for the negligence claim. And so the same issues, and that goes to the warning issues also. The failure to have audible and visual warnings for third parties that are outside the machine to know that the override switch has been engaged, that again is a design choice that a reasonable engineer would not have done that. Ultimately, I'm using up my time here, but I will wrap up before my last minute of rebuttal and say that the claims are legally separate but factually intertwined. Thank you. Thank you. Mr. Holmes? May it please the court. I'm Leon Holmes and I represent Skylift on this appeal. We've laid out our case in our briefs and I don't think I need to add a lot to it to summarize the issue. The central issue is whether the Digger of Derrick was unreasonably dangerous as defined in the Arkansas statute. The Arkansas statute says that a product is dangerous, unreasonably dangerous means that a product is dangerous to an extent beyond that which will be contemplated by the ordinary and reasonable buyer or user, and I'm skipping some, taking into account the special training and knowledge that the buyer or user has or is required to have. In here, the buyer was energy, the users were alignment, they all knew that the boom should not be elevated without the outriggers in place to stabilize the machine. Every lineman out there that day knew that and that is an undisputed fact in paragraph 29 of the statement of undisputed facts that we submitted below. The only thing that he said today that I feel like I need to respond to is he said that his expert said that a constant override switch would have solved the problem and avoided the accident. Actually his expert said that a constant pressure override switch would not have avoided the accident here because it was done intentionally. A constant pressure override switch is a switch in which you have to hold it the whole time that it's in use. And since Mr. Gray did this intentionally, there's no evidence or no reason to believe that that would have avoided the accident, and that's in the appendix at page 300-301. The one thing in the reply brief that I feel like we need to respond to is the citation of the two cases about open and obvious danger. That was this court's Lockley case and the Arkansas Supreme Court's Aderhold case. In both of those cases, the injury occurred from normal use of the machinery. And both opinions emphasized that the accident happened as a result of an accounting danger through a normal use of the machinery. Here the use was not a normal use. It was an abnormal use. And I would refer the court to comment H, to restatement second of tort, section 402A, which is set out on page 16 of our brief. Comment H says the product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling, then the manufacturer is not liable. And that's what happened here. And that's the distinction between our case and the open and obvious danger cases that the appellant has cited. Now with that, I think we've set out everything in our brief that I would otherwise say, but I will take questions before I sit down. Okay. So now we ask that Judge Loken. I don't know if it's in the record. Did workers' compensation apply here? Yes, sir. So benefits were received. They were. And Mr. Gray was dismissed without prejudice? That's correct. Is there another lawsuit pending? Not that I know of. But I don't know the answer to that, but I'm not aware of another one pending against Mr. Gray. All right. Thank you. Thank you. Your Honors, I have 40. I asked you. Oh, I'm sorry. I have one question. Absolutely, Your Honor. That is respond. I was going to ask you this. Respond of section 402A, comment H. I will. Seems to me it's on point. Judge, it's not, and I'll tell you why. Abnormal use is not foreseeable use by a designer. A designer, and maybe Judge Arnold, who has an electrical engineering degree from undergrad, might have some knowledge on this. An engineer who puts an override switch in a machine intends for someone to use the override switch. Period. That's foreseeable use when someone uses it, even if they use it in a way that the designer doesn't contemplate. That's not abnormal use under comment H. And what's the best case for that? Your Honor, I think the Lockley case that's cited in and the Adderhall case that are cited in the reply brief both address that issue. Also, I apologize, Your Honor, there's one other case I know I cited and I don't remember off the top of my head. It's addressed in the brief, and it's directly on point. I want to clear one other thing up in the record. Mr. Edwards did not ever agree to raise the boom. I misstated that. Mr. Gray made the decision to raise the boom completely on his own. Mr. Edwards did not. And that's all I have, Your Honors. Thank you for your time, and we appreciate it. Thank you, counsel. Case has been well briefed and argued. We take it under advisement.